UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANNCORP, INC.<br>1610 Republic Road<br>Huntingdon Valley, Pennsylvania 19006,<br><br>MANN MANUFACTURING SERVICES,<br>INC.<br>1610 Republic Road<br>Huntingdon Valley, Pennsylvania 19006, and<br><br>SMT INTERNATIONAL, INC.<br>1610 Republic Road<br>Huntingdon Valley, Pennsylvania 19006,<br><br>             Plaintiffs,<br><br>       v.<br><br>LED ONE DISTRIBUTION, INC.,<br>4031 Clipper Court<br>Fremont, California 95438,<br><br>JINLEI "PENNY" TANG<br>4885 Clairemont Mesa Blvd. #501<br>San Diego, California 92117, and<br><br>TREVER McCOY,<br>4885 Clairemont Mesa Blvd. #501<br>San Diego, California 92117,<br><br>            Defendants. | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | CIVIL ACTION NO. |

## CIVIL ACTION COMPLAINT

### PARTIES

1.    Plaintiff Manncorp, Inc. ("Manncorp"), is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 1610 Republic Road, Huntingdon Valley, Pennsylvania 19006.

2.      Plaintiff Mann Manufacturing Services, Inc. ("Mann Manufacturing Services"), t/a E LED Lights, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 1610 Republic Road, Huntingdon Valley, Pennsylvania 19006.

3.      Mann Manufacturing Services has carried on the business of Manncorp's ELEDLIGHTS business since approximately April 1, 2015.   Prior to that time, Manncorp's ELEDLIGHTS business was carried on by Manncorp.

4.      Plaintiff SMT International, Inc. ("SMT") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 1610 Republic Road, Huntingdon Valley, Pennsylvania 19006.

5.      Mann Manufacturing Services and SMT are affiliates of Manncorp.

6.      Mann Manufacturing Services, SMT and Manncorp are referred to collectively herein as "Manncorp".

7.      Defendant LED One Distribution, Inc. ("LED One"), is a corporation organized and existing under the laws of the State of California, with its principal place of business at 4031 Clipper Court, Fremont, California 94538.

8.      Defendant Jinlei "Penny" Tang ("Tang") is an adult individual and a resident of the State of California, with an address at 4885 Clairemont Mesa Blvd., #501, San Diego, California 92117.

9.      Defendant Trever McCoy ("McCoy") is an adult individual and a resident of the state of California, with an address at Clairemont Mesa Blvd., San Diego, California 92117.

10.     Tang and McCoy are husband and wife.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 in that plaintiffs' claims against defendants include claims based upon trademark infringement under the Lanham Act, 15 U.S.C. § 1051, et seq.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in this judicial district.  Additionally, Tang entered into an Employment Agreement with Manncorp that included a forum selection clause designating this court as the proper forum for litigation between the parties.

## FACTS

## MANNCORP'S BUSINESS AND SUPPLIER RELATIONSHIPS

13.     Manncorp is a manufacturer and distributor of electronic production equipment, including surface-mounted technology ("SMT") equipment.

14.     Manncorp also operates ELEDLIGHTS, an ecommerce business through which it sells a broad array of LED lighting equipment, fixtures and accessories to the general public throughout the United States.  Manncorp operates ELEDLIGHTS through an ecommerce website with the domain name www.eledlights.com ("eledlights.com").

15.     Defendant LED One is a lighting product supplier for residential and commercial LED lighting.  LED One offers LED lighting for commercial contractors, businesses, lighting channels and resellers.

16.     Defendant LED One has been a supplier of LED lighting products for Manncorp since October 14, 2014.

## TANG'S EMPLOYMENT AGREEMENT

17.     One June 21, 2011, Tang was hired as an employee of Manncorp.  A true and correct copy of Tang's June 21, 2011, Employment Agreement with Manncorp (the "Employment Agreement") is attached as Exhibit "A".

18.     As set forth in Section D of the Employment Agreement, Tang's duties as an employee of Manncorp included, but were not limited to, the following:

- Assisting with Manncorp's information technology;

- Assisting with the development and implementation of sales strategies;

- Participating in the preparation of marketing and sales information requiring contact with suppliers;

- Reviewing Internet optimization;

- Reviewing search engine statistics;

- Direct contact with customers and vendors;

- Reviewing, using and upkeeping of databases showing customers and potential customers, confidential vendor information and Manncorp service manuals; and

- Using technical, marketing and sales literature, manuals and their electronic versions.

See Exhibit "A", Section D.

19.     Critically, Tang's primary duties with Manncorp included working daily on Manncorp's ecommerce website and handling all search engine optimization (SEO) for eledlights.com.  In this capacity, Tang had access to eledlights.com's search engine statistics, keywords, SEO costs and pricing strategies (on per-unit and multiple-unit bases).  Manncorp's SEO strategy is crucial to the success of eledlights.com.

20. Prior to Tang's employment with Manncorp, Manncorp did not operate an ELEDLIGHTS ecommerce website. Tang was instrumental in developing eledlights.com.

21. Tang also had access to Manncorp's confidential pricing structure with UPS, a complex pricing formula developed by UPS exclusively for Manncorp for the purpose of determining Manncorp's shipping costs.

22. Section A of the Employment Agreement provides that during the term of her employment with Manncorp, Tang agreed to devote her time and efforts to Manncorp's products. Exhibit "A", Section A.

23. Section G of the Employment Agreement provides that for a period of three (3) years after the expiration or termination of the Employment Agreement, regardless of the cause, Tang is prohibited from, directly or indirectly, for herself or through, on behalf of, or in conjunction with any other person, partnership or corporation, soliciting, servicing, or contacting any Supplier of Manncorp for any competitive business purpose, or from hiring any Manncorp employees. Exhibit "A", Section G.

24. The "Suppliers" referred to in Section G are defined in an Addendum attached to the Employment Agreement and include "all vendors which subsequent to the execution date of [the Employment Agreement] form a partnership with Manncorp". Exhibit "A", Addendum "B".

25. Section H of the Employment Agreement provides that for a period of five (5) years after the expiration or termination of the Employment Agreement, regardless of the cause, Tang is prohibited from, directly or indirectly, for herself or through, on behalf of, or in conjunction with any other person, partnership or corporation, reproducing or selling any Manncorp books, records, manuals, literature, products, electronic materials or other materials owned by Manncorp or used

by Manncorp in connection with the conduct of its business for any competitive purpose whatsoever. Exhibit "A", Section H.

26.     Section I of the Employment Agreement provides that, by executing the Employment Agreement, Tang acknowledged that Manncorp owns all equipment, inventory, telephone numbers, customer lists (Goldmine data bank) and prospective customer database lists, mailing lists, software, books, records, manuals, literature, products and other materials owned by Manncorp in connection with the conduct of its business, and that all such materials shall, at all times, remain the property of Manncorp. Exhibit "A", Section I.

27.     Section I of the Employment Agreement further provides that upon termination of the Employment Agreement, Tang is required to surrender all such property to Manncorp. Id.

28.     Section J of the Employment Agreement provides that for a period of two (2) years after the expiration or termination of the Employment Agreement, neither Tang, nor any members of her immediate family, are permitted to, directly or indirectly, for themselves or through, on behalf of, or in conjunction with any other person, partnership, or corporation, to solicit, service, or contact any customer of Manncorp, for any competitive business purpose whatsoever. Exhibit "A", Section J.

29.     Section K of the Employment Agreement provides that for a period of two (2) years after the expiration or termination of the Employment Agreement, Tang and all members of her immediate family are prohibited from divulging or soliciting any known prospective customer contacts of Manncorp. Exhibit "A", Section K.

30.     Section L of the Employment Agreement provides that, by executing the Employment Agreement, Tang acknowledged that certain proprietary information of Manncorp would be disclosed to her in the course of her employment, including Manncorp's overseas and

domestic suppliers, "which represent the lifeblood of Manncorp's business." Tang agreed, in turn, that during and at any time after the termination of the Employment Agreement, she would maintain the confidentiality of, and would not disclose to any person, employee, firm, partnership, or corporation, the names, addresses, office, mobile and personal telephone numbers, email addresses, or any other information which would, or could, divulge the identity of Manncorp's suppliers, customers, prospective customers, referral sources, products, services, methods, operation, financing, or services.  Exhibit "A", Section L.

31.    Tang also agreed to maintain the confidentiality of any secret or confidential information, wherever and however stored, relating to research, computer software and hardware, development, strategies, technologies, finances, marketing methods, databases, business or technical processes, systems, methods, machines, inventions, discoveries, or other matters which are of a proprietary or confidential nature.  Id.

32.    Pursuant to Section L of the Employment Agreement, "secret or confidential information" includes all information not generally known in the industry, even if such information was developed by Tang.  Id.

## DEFENDANTS' WRONGFUL ACTS

33.    On March 1, 2015, unbeknownst to Manncorp and in direct violation of the Employment Agreement, Tang accepted an employment position as a "unit manager" with LED One.  A true and correct copy of the March 1, 2015 Offer Letter from LED One to Tang, countersigned by Tang (the "Tang Offer Letter"), is attached as Exhibit "B".

34.    Pursuant to the Tang Employment Letter, Tang's employment with LED One began on March 1, 2015.  See Exhibit "B".

35.    Tang did not notify anyone at Manncorp that she had accepted an employment position with LED One, and Tang has concealed her simultaneous employment from Manncorp since March 1, 2015.  Tang remained employed by both Manncorp and LED One simultaneously.

36.    McCoy was employed by Manncorp as a shipping specialist (McCoy's official employer was plaintiff SMT).

37.    In this capacity, McCoy had access to Manncorp's confidential shipping formula with UPS, as well as Manncorp's shipping methods and other related logistics.

38.    On March 5, 2015, McCoy accepted an employment position in the sales department of LED One.  A true and correct copy of the March 5, 2015, Offer Letter from LED One to McCoy, countersigned by McCoy (the "McCoy Offer Letter"), is attached as Exhibit "C".

39.    As with Tang, McCoy did not notify anyone at Manncorp that he had accepted an employment position with LED One, McCoy has concealed his simultaneous employment from Manncorp since March 5, 2015.  McCoy remained employed by both Manncorp and LED One simultaneously.

40.    On April 16, 2015, six (6) weeks after she secretly accepted employment with LED One, Tang notified Henry Mann ("Mann"), President and CEO of Manncorp, that she was resigning her employment with Manncorp effective April 30, 2015.

41.    On April 17, 2015, Mann acknowledged Tang's resignation and sent her an email reminding her of her obligations under the Employment Agreement.

42.    Only later did Manncorp learn that in the six (6) weeks between the time that Tang secretly accepted her employment with LED One (3/1/2015) and the date that Tang tendered her resignation to Mann (4/16/2015), Tang had been stealing Manncorp's proprietary and confidential information for LED One's benefit (and for her own benefit as an employee of LED One).

43.    Additionally, upon information and belief, Tang had been devoting her time to building a new ecommerce website for LED One, with the domain name www.eledsupply.com ("eledsupply.com"), using Manncorp's proprietary source code, software, web design and other proprietary information, in order to enable LED One to directly compete with Manncorp.

44.    By way of example, Manncorp learned that on March 18, 2015, Tang used Manncorp's computers to write code for the eledsupply.com website.  A true and correct copy of the metadata information evidencing Tang's use of Manncorp's computers during work hours to write code for the competing eledsupply.com website is attached as Exhibit "D".

45.    On March 27, 2015, Tang used Manncorp's computers to perform design work for the competing eledsupply.com website.  This design work included the design of various "eLED Supply" logos for the website.   True and correct copies of screen shots of work done on Manncorp's computers for the eledsupply.com website, including various logo designs, are attached collectively as Exhibit "E".

46.    On April 13, 2015, Tang downloaded and exported Manncorp's entire proprietary customer list, consisting of 51 pages and over 3,600 names, telephone numbers, email addresses and other contact information.

47.    Also on April 13, 2015, Tang downloaded an eight-page LED One price list to her Manncorp computer.  Upon information and belief, Tang downloaded the price list to her Manncorp computer in order to incorporate the list into the competing website she was building for LED One, using the source code and other proprietary information belonging to Manncorp.

48.    Records extracted from Tang's computer at Manncorp show that Tang performed work for LED One – including work on LED One's new ecommerce site, eledsupply.com – on at

least fifteen (15) separate days between March 10, 2015, and April 17, 2015, while she was still employed by Manncorp and during work hours.

49.    It was only after Tang had completed this work for LED One – including the theft of Manncorp's proprietary customer list, source code and other confidential information – that Tang finally saw fit to notify Manncorp that she was resigning her position with Manncorp effective April 30, 2015.

50.    During the time that Tang was building the LED One website and stealing Manncorp's proprietary and confidential information, Manncorp was paying Tang her regular salary, plus overtime.  Manncorp was, in effect, paying Tang to steal its information and to build a website for its direct competitor.

51.    Additionally, while Tang was busy stealing Manncorp's proprietary and confidential information and building LED One's ecommerce website, she neglected her duties with Manncorp and Manncorp's ecommerce performance suffered as a result.

52.    The actions of Tang and LED One demonstrate a concerted effort by Tang and LED One to steal Manncorp's proprietary information to build a competing ecommerce website for LED One, and to gain an unfair competitive advantage over Manncorp through improper and illegal means.

53.    Tang's theft of Manncorp's proprietary information to benefit LED One, her dual employment with LED One and Manncorp, and her current employment with LED One violate the express terms of the Employment Agreement.

54.    As a member of Tang's immediate family, McCoy is prohibited from working for LED One.

55.     Additionally, by employing Tang while she was still employed by Manncorp, LED One has interfered with Manncorp's contractual relations.

56.     LED One's eledsupply.com website is substantially similar to Manncorp's eledlights.com website, and prior to Tang's theft of Manncorp's proprietary source code and other confidential information, LED One had been a manufacturer and distributor of LED products but had not operated an ecommerce website.

57.     In fact, the public-facing end of LED One's eledsupply.com website is nearly identical in appearance to the public-facing end of Manncorp's eledlights.com website, including layout, product descriptions and pricing.

58.     Upon information and belief, Tang used Manncorp's proprietary source code and other confidential information to build both the front-end and back-end features for the eledsupply.com website.

59.     Tang has also duplicated and misappropriated Manncorp's proprietary SEO approach and social media image – including the design of Manncorp's Facebook page – for use in connection with the eledsupply.com website.

60.     Upon information and belief, Tang has also added products to the eledsupply.com website which LED One does not manufacture but which Tang learned, in the course and scope of her employment with Manncorp, result in high sales volumes for Manncorp.

61.     Moreover, the domain name used by LED One ecommerce site (eledsupply.com) is confusingly similar to the distinctive domain name for the Manncorp ecommerce site (eledlights.com).

62.     Both the eledsupply.com domain name and the appearance of the eledsupply.com website were created by Tang and LED One with the intent to deceive the public and to confuse the public regarding the source of the goods they are receiving.

63.     Defendants have a bad faith intent to profit from the confusingly similar domain name and the goodwill built up by Manncorp over many years.

64.     LED One did not previously use the eledesupply.com domain name in connection with the bona fide offering of goods or services.

65.     Defendants created LED One's new ecommerce site, with the domain name eledsupply.com, with the intent to divert customers from Manncorp's ecommerce site (eledlights.com) for its own commercial benefit.

66.     LED One does not have any bona fide noncommercial or fair use of the eledsupply.com domain name.

67.     Upon information and belief, the registrant of the domain name eledsupply.com is LED One or an affiliate of LED One, or an authorized licensee.

68.     In the course of her employment with Manncorp, Tang had access to extremely sensitive and valuable information owned and used by Manncorp.  For example, Tang had access to Goldmine, a software program used by Manncorp, which contained, among other things: between 30,000 and 40,000 names of manufacturers and customers, including pricing information, product specifications, photographs and shipping costs; proprietary promotional and marketing material; and credit card numbers for Manncorp's customers.  Goldmine is Manncorp's Customer Relation Management (CRM) software and is critical to the operation of the entire company.

69.     In the course of her employment with Manncorp, Tang also had access to Magento, Manncorp's proprietary ecommerce software.  Tang's use of the information she stole from

Magento – including Manncorp's confidential customer information – would cause irreparable harm to Manncorp.

70.    The disclosure of this information by Tang, especially to LED One, one of Manncorp's competitors, would have devastating effects for Manncorp. Moreover, Manncorp does not yet know the full extent of Tang's deceptive actions or the amount of information that she stole from Manncorp for LED One's benefit.

71.    Prior to Tang's theft of Manncorp's proprietary and confidential information, LED One was solely a distributor of LED lights to other dealers and did not operate an ecommerce site. LED One built an ecommerce site (using Manncorp's proprietary confidential information) only after seeing the success that Manncorp had with its own ecommerce site.

72.    Stealing Tang and McCoy from Manncorp was the quickest way for LED One to build its own ecommerce site in light of Tang's unfettered access to Manncorp's proprietary and confidential information, and Tang's central role in the development of Manncorp's ecommerce site.

73.    LED One, Tang and McCoy effectively stole Manncorp's entire ecommerce business for LED One's benefit, and for the purpose of diverting Manncorp's customers to LED One's own ecommerce site in order to drive Manncorp out of business.

74.    LED One formed eledsupply.com as an attempt to clone Manncorp's eledlights.com website and to steal Manncorp's business. Defendants' theft of Manncorp's proprietary and confidential information enabled LED One to build a counterfeit eledlight.com website with the same shopping experience.

75.    Additionally, by stealing Manncorp's proprietary and confidential information, LED One knows what goods to carry and what customers to sell them to. This will allow Tang

and McCoy – former employees of Manncorp – to call Manncorp's customers and to offer those customers the same products at the same prices that they receive from Manncorp, resulting in a significant likelihood of confusion amongst Manncorp's customers and the general public.

76.     LED One, Tang and McCoy conspired with one another to undertake the wrongful acts set forth above.

77.     As the result of the actions of Tang, McCoy and LED One, Manncorp is entitled to monetary damages and to injunctive relief as set forth below.

## COUNT I
### Trademark Infringement and Unfair Competition – Lanham Act (15 U.S.C. § 1051, et seq.)
### Plaintiffs v. LED One

78.     Manncorp incorporates by reference the foregoing averments as if fully set forth herein.

79.     Manncorp is the registrant of the domain name www.eledlights.com.

80.     LED One's eledsupply.com website is substantially similar to Manncorp's eledlights.com website, and prior to Tang's theft of Manncorp's proprietary source code and other confidential information, LED One had been a manufacturer and distributor of LED products but had not operated an ecommerce website.

81.     The public-facing end of LED One's eledsupply.com website is nearly identical in appearance to the public-facing end of Manncorp's eledlights.com website, including layout, product descriptions and pricing.

82.     Upon information and belief, Tang used Manncorp's proprietary source code and other confidential information to build both the front-end and back-end features for the eledsupply.com website.

83.   Tang has also duplicated and misappropriated Manncorp's proprietary SEO approach and social media image – including the design of Manncorp's Facebook page – for use in connection with the eledsupply.com website.

84.   The domain name used by LED One ecommerce site (eledsupply.com) is confusingly similar to the distinctive domain name for the Manncorp ecommerce site (eledlights.com).

85.   Both the eledsupply.com domain name and the appearance of the eledsupply.com website were created by LED One with the intent to deceive the public and to confuse the public regarding the source of the goods they are receiving.

86.   Defendants have a bad faith intent to profit from the confusingly similar domain name and the goodwill built up by Manncorp over many years.

87.   LED One did not previously use the eledsupply.com domain name in connection with the bona fide offering of goods or services.

88.   Defendants created LED One's new ecommerce site, with the domain name eledsupply.com, with the intent to divert customers from Manncorp's ecommerce site (eledlights.com) for its own commercial benefit.

89.   LED One does not have any bona fide noncommercial or fair use of the eledsupply.com domain name.

90.   Upon information and belief, the registrant of the domain name eledsupply.com is LED One or an affiliate of LED One, or an authorized licensee.

91.   Manncorp has no adequate remedy at law in that the damages as set forth above, including the use of the confusingly similar domain name eledsupply.com, and the consequential injury to consumer goodwill, cannot be compensated in monetary damages.   The damages

sustained by Manncorp as a result of the loss of its goodwill and the potential deception and harm to the consuming public cannot be ascertained nor can such harm be compensated for in monetary damages.

92.     As a direct and proximate result, Manncorp has suffered and continues to suffer damage to its business, reputation and goodwill due to LED One's use of the domain name eledsupply.com.

93.     Manncorp's immediate and irreparable harm will increase unless LED One is enjoined from using the confusingly similar domain name eledsupply.com.

94.     A preliminary and permanent injunction is the only method by which Manncorp can prevent the further usurpation of its business system.

WHEREFORE, plaintiffs Manncorp, Inc., Mann Manufacturing Services, Inc., and SMT International, Inc., demand judgment in their favor and against Defendants as follows:

a.     That LED One (and any of its affiliates, successors and/or assigns) be preliminarily and permanently enjoined from operating or conducting an ecommerce website using the domain name www.eledsupply.com, or any other similar domain name;

b.     That LED One (an any of its affiliates, successors and/or assigns) be preliminarily and permanently enjoined from operating any ecommerce website based on or operated in accordance with any of Manncorp's confidential or proprietary information;

c.     Exemplary damages;

d.     Attorneys' fees and costs incurred in bringing this action; and

e.     Such further relief as this Court deems just and proper.

## COUNT II
### Lanham Act – False Designation of Source of Origin
### (Plaintiffs v. LED One)

95.     Manncorp incorporates by reference the foregoing averments as if fully set forth herein.

96.     Manncorp provides services in interstate commerce by selling LED lighting equipment, fixtures and accessories to the general public throughout the United States.

97.     Among Manncorp's proprietary tools is a customized, distinctive and unique ecommerce website, eledlights.com.

98.     By developing and implementing a counterfeit eledlights.com website (eledsupply.com) with a nearly-identical appearance and shopping experience as the eledlights.com website (including layout, product descriptions and pricing), LED One has created a significant likelihood of confusion amongst Manncorp's customers and the general public.

99.     Manncorp is being harmed in part by its current customers, or potential customers, being led to believe that when they are purchasing products through LED One's eledsupply.com website, they are, in fact, purchasing products through Manncorp's eledlights.com website.

100.     Additionally, Manncorp is being harmed in part by its current customers, or potential customers, being led to believe that LED One and Manncorp are affiliated with one another, and being confused as to the source and sponsorship of the competing businesses.

101.     Moreover, LED One stole Manncorp's proprietary software, code, web design layout, pricing structures, product offerings and SEO strategies in order to build and operate an ecommerce website and to solicit business in direct competition with Manncorp, without Manncorp's permission.

102.   With full knowledge of Manncorp's right in and to Manncorp's eledlights.com website, LED One has deliberately mislead (and continues to mislead) Manncorp's customers, and potential customers, as to the source of the goods they purchase, and as to the connection between LED One and Manncorp, in violation of 15 U.S.C. § 1125(a).

103.   LED One's deliberate misappropriation of Manncorp's eledlights.com website is likely to cause confusion, to cause mistake, and to deceive the public as to the origin, sponsorship, or approval of the products and services offered to the public by Manncorp.

104.   LED One's continued misappropriation of Manncorp's eledlights.com website is causing Manncorp ongoing and irreparable harm, including, but not limited to, damage to its business, reputation, goodwill and relations with its customers and suppliers.

105.   Manncorp has no adequate remedy at law because it cannot be adequately compensated for the deprivation and dilution of the consumer recognition and goodwill built up by Manncorp as a result of Defendants' wrongful and deliberate conduct.

WHEREFORE, plaintiffs Manncorp, Inc., Mann Manufacturing Services, Inc., and SMT International, Inc., demand judgment in their favor and against LED One as follows:

a.   That LED One, its officers, agents, servants, employees, and any person acting in concert with them, be preliminarily and permanently enjoined from directly or indirectly operating or conducting business through the eledsupply.com website, or any other website, which is based on, incorporates, or is operated in accordance with any Manncorp Trade Secret(s);

b.   Exemplary damages;

c.   Attorneys' fees pursuant to 15 U.S.C. § 1117(a);

d.   Treble damages pursuant to 15 U.S.C. § 1117(a);

e.      Costs of this action; and

f.      Such other relief as this Court deems just and proper.

### COUNT III
### Unfair Competition
### (Plaintiffs v. LED One)

106.    Manncorp incorporates by reference the foregoing averments as if fully set forth herein.

107.    LED One's acts as averred above constitute infringement and unfair competition in violation of common law.

108.    As a direct and proximate result, Manncorp has suffered damage to its business, reputation and goodwill.

109.    Unless the LED One's acts of infringement, misrepresentations and unfair competition are restrained and enjoined, Manncorp will be seriously and irreparably damaged.

WHEREFORE, plaintiffs Manncorp, Inc., Mann Manufacturing Services, Inc., and SMT International, Inc., demand judgment in their favor and against LED One as follows:

a.      That Defendants be preliminarily and permanently enjoined and restrained from disclosing the Manncorp Trade Secrets, from using Manncorp's Trade Secrets or other proprietary and confidential information, and from otherwise unfairly competing with Manncorp;

b.      That Defendants return all Manncorp Trade Secrets and other confidential information, and any copies thereof, in their possession to Manncorp;

c.      That Defendants (and any of their affiliates, successors and/or assigns) be preliminarily and permanently enjoined from operating or conducting business

through their eledsupply.com website, or any other website, which is based on or operated in accordance with any Manncorp Trade Secret(s);

d.   Monetary damages caused by the misappropriation of the Manncorp Trade Secrets and LED One's unfair competition with Manncorp, in an amount to be proven at trial;

e.   Exemplary damages;

f.   Attorneys' fees and costs incurred in bringing this action; and

g.   Such further relief as this Court deems just and proper.

## COUNT IV
### Misappropriation of Trade Secrets – Pennsylvania Uniform Trade Secrets Act
#### (12 Pa.C.S. § 5301, et seq.)
#### Plaintiffs v. All Defendants

110.   Manncorp incorporates by reference the foregoing averments as if fully set forth herein.

111.   As a result of the expenditure of time, effort, skill and money, Manncorp has created, acquired and developed certain proprietary and confidential information and trade secrets including, but not limited to, computer software, computer code, SEO and other business methodologies, customer lists, supplier contact information, product and pricing information, shipping information, databases, financial information, design processes and other information not generally known to the public (collectively the "Manncorp Trade Secrets").

112.   The Manncorp Trade Secrets derive independent economic value from not being known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

113.   The Manncorp Trade Secrets are the subject of significant efforts by Manncorp to maintain their secrecy.

114.   As set forth above, Tang and McCoy disclosed numerous Manncorp Trade Secrets to LED One. These Manncorp Trade Secrets include, but are not limited to, Manncorp's customer list, supplier information, proprietary software information and computer code, SEO methodologies, ecommerce website design, proprietary pricing and shipping information and other general business strategies, methodologies and processes.

115.   At the time they disclosed the Manncorp Trade Secrets to LED One, Tang and McCoy knew that this information was confidential.

116.   Manncorp did not provide Tang or McCoy with express or implied consent to disclose the Manncorp Trade Secrets to LED One, or to anyone else.

117.   Additionally, at the time it acquired the Manncorp Trade Secrets from Tang and McCoy, LED One knew, or had reason to know, that Tang and McCoy had acquired the Manncorp Trade Secrets under circumstances giving rise to a duty to maintain its secrecy.

118.   Upon information and belief, Defendants have used and continue to use the Manncorp Trade Secrets they misappropriated from Manncorp.

119.   Defendants' misappropriation of the Manncorp Trade Secrets is willful and malicious.

120.   Defendants are intentionally trading on the Manncorp Trade Secrets and are deliberately misappropriating the Manncorp Trade Secrets for their own benefit.

121.   Defendants' use and/or dissemination of the Manncorp Trade Secrets as set forth above will cause Manncorp irreparable injury in that:  (a) Manncorp will be powerless to prevent defendants from usurping the goodwill created for Manncorp's products, and Manncorp cannot be compensated for the time and effort invested by Manncorp in creating a market for Manncorp's products; (b) business will be diverted from Manncorp; (c) the goodwill related to Manncorp's

reputation will be diluted and taken from Manncorp's control; and (d) Manncorp will lose profits and revenues which, because of Defendants' conduct, cannot be readily calculated.

122.   Manncorp's immediate and irreparable harm will continue unless Defendants are enjoined from committing their wrongful acts.

WHEREFORE, plaintiffs Manncorp, Inc., Mann Manufacturing Services, Inc., and SMT International, Inc., demand judgment in their favor and against Defendants as follows:

a.   That Defendants be preliminarily and permanently enjoined and restrained from disclosing the Manncorp Trade Secrets, from using Manncorp's Trade Secrets or other proprietary and confidential information, and from otherwise unfairly competing with Manncorp;

b.   That Defendants return all Manncorp Trade Secrets and other confidential information, and any copies thereof, in their possession to Manncorp;

c.   That Defendants (and any of their affiliates, successors and/or assigns) be preliminarily and permanently enjoined from operating or conducting business through their eledsupply.com website, or any other website, which is based on or operated in accordance with any Manncorp Trade Secret(s);

d.   Monetary damages caused by the misappropriation of the Manncorp Trade Secrets, in an amount to be proven at trial;

e.   Exemplary damages;

f.   Attorneys' fees and costs incurred in bringing this action; and

g.   Such further relief as this Court deems just and proper.

## COUNT V
### Tortious Interference with Contractual Relations
### (Plaintiffs v. LED One)

123.   Manncorp incorporates by reference the foregoing averments as if fully set forth herein.

124.   Manncorp entered into a valid employment agreement with Tang on June 21, 2011. See Exhibit "A".

125.   LED One intentionally, improperly and purposefully induced Tang to breach her employment agreement with Manncorp by entering into a separate employment agreement with her and by inducing her to steal Manncorp's proprietary and confidential information.

126.   LED One interfered with Manncorp's contractual relation with Tang for its own benefit and with the knowledge and intent that such interference would harm Manncorp.

127.   LED One does not have any privilege or justification for interfering with Manncorp's contractual relationship with Tang.

128.   As a result of LED One's interference with Manncorp's pre-existing contractual relationship with Tang, Manncorp has suffered economic harm in an amount to be proven at trial.

WHEREFORE, plaintiffs Manncorp, Inc., Mann Manufacturing Services, Inc., and SMT International, Inc., demand judgment in their favor and against LED One for compensatory and punitive damages arising from its intentional inference with Manncorp's contractual relations, together with interest and such further relief as this Court deems just and proper.

## COUNT VI
### Breach of Contract – Post-Termination Obligations
### (Plaintiffs v. Tang and McCoy)

129.   Manncorp incorporates by reference the foregoing averments as if fully set forth herein.

130.   Manncorp entered into a valid employment agreement with Tang on June 21, 2011. See Exhibit "A".

131.   Tang terminated her Employment Agreement with Manncorp on April 16, 2015.

132.   LED One has been a supplier of Manncorp since October 14, 2014.

133.   In being employed by LED One, Tang is expressly violating the non-compete provision contained in Section G of the Employment Agreement. See Exhibit "A".

134.   Similarly, in being employed by LED One, Tang is expressly violating the non-solicitation provision contained in Section J of the Employment Agreement.

135.   As Tang's husband, McCoy is likewise prohibited from being employed by LED One in accordance with Section J of the Employment Agreement. See Exhibit "A".

136.   Manncorp has no adequate remedy at law in that the damages as set forth above, including the misappropriation and theft of its trade secrets and other confidential and proprietary information, and the consequential injury to consumer goodwill, cannot be compensated in monetary damages.  The damages sustained by Manncorp as a result of the loss of its goodwill and the potential deception and harm to the consuming public cannot be ascertained nor can such harm be compensated for in monetary damages.

137.   As a direct and proximate result, Manncorp has suffered and continues to suffer damage to its business, reputation and goodwill due to Tang and McCoy's continued violations of the post-termination non-compete and non-solicitation provisions contained in the Employment Agreement.

138.   Manncorp's immediate and irreparable harm will increase unless Tang and McCoy are enjoined from violating the post-termination non-compete and non-solicitation provisions contained in the Employment Agreement.

139. As preliminary and permanent injunction is the only method by which Manncorp can prevent the further usurpation of its business system and trade secrets.

WHEREFORE, plaintiffs Manncorp, Inc., Mann Manufacturing Services, Inc., and SMT International, Inc., demand judgment in their favor and against Tang and McCoy as follows:

a. That Tang be preliminarily and permanently enjoined and restrained from directly or indirectly, for herself, for herself or through, on behalf of, or in conjunction with any other person, partnership, or corporation, soliciting, servicing, or contacting any supplier of Manncorp – including LED One – for any competitive purpose and from hiring any Manncorp employee for a period of two (2) years from the date of termination of the Employment Agreement;

b. That Tang and McCoy be preliminarily and permanently enjoined and restrained from directly or indirectly, for themselves or through, on behalf of, or in conjunction with any other person, partnership, or corporation, soliciting, servicing, or contacting any customer of Manncorp, for any competitive purpose whatsoever, for a period of three (3) years from the date of termination of the Employment Agreement;

c. Attorneys' fees and costs incurred in bringing this action; and

d. Such further relief as this Court deems just and proper.

## COUNT VII
### Breach of Contract – Confidential Information
### (Plaintiffs v. Tang)

140. Manncorp incorporates by reference the foregoing averments as if fully set forth herein.

141.    Manncorp entered into a valid employment agreement with Tang on June 21, 2011. See Exhibit "A".

142.    Tang terminated her Employment Agreement with Manncorp on April 16, 2015.

143.    By stealing, disclosing and disseminating Manncorp's confidential and proprietary information, including, but not limited to, the Manncorp Trade Secrets, as set forth herein, Tang has violated and continues to violate the confidentiality provisions contained in Sections H, I and L of the Employment Agreement.  See Exhibit "A".

144.    Manncorp has no adequate remedy at law in that the damages as set forth above, including the misappropriation and theft of its trade secrets and other confidential and proprietary information, and the consequential injury to consumer goodwill, cannot be compensated in monetary damages.  The damages sustained by Manncorp as a result of the loss of its goodwill and the potential deception and harm to the consuming public cannot be ascertained nor can such harm be compensated for in monetary damages.

145.    As a direct and proximate result, Manncorp has suffered and continues to suffer damage to its business, reputation and goodwill due to Tang's continued violation of the confidentiality provisions contained in the Employment Agreement.

146.    Manncorp's immediate and irreparable harm will increase unless Tang is enjoined from violating the confidentiality provisions contained in the Employment Agreement.

147.    As preliminary and permanent injunction is the only method by which Manncorp can prevent the further usurpation of its business system and trade secrets.

WHEREFORE, plaintiffs Manncorp, Inc., Mann Manufacturing Services, Inc., and SMT International, Inc., demand judgment in their favor and against Tang as follows:

a. That Tang be preliminary and permanently enjoined from, directly or indirectly, for herself or through, or on behalf of, or in conjunction with, any other person, partnership, or corporation, from using, reproducing, or selling any of Manncorp's books, records, manuals, literature, products, electronic materials, or other materials owned by Manncorp or used by Manncorp in connection with the conduct of its business, for any competitive business purpose whatsoever, for a period of (5) years from the date of termination of the Employment Agreement;

b. That Tang return all Manncorp confidential and proprietary information, and any copies thereof, in her possession, to Manncorp, as set forth in Section I of the Employment Agreement;

c. That Tang maintain the strict confidentiality of Manncorp's proprietary and confidential information, as set forth in Section L of the Employment Agreement;

d. Attorneys' fees and costs incurred in bringing this action; and

e. Such further relief as this Court deems just and proper.

## COUNT VIII
## Unjust Enrichment
## (Plaintiffs v. LED One)

148. Manncorp incorporates by reference the foregoing averments as if fully set forth herein.

149. LED One has received, accepted and derived benefits as a result of its wrongful acts.

150. As a direct and proximate result, LED One has been unjustly enriched at the expense of Manncorp.

WHEREFORE, plaintiffs Manncorp, Inc., Mann Manufacturing Services, Inc., and SMT International, Inc., demand judgment in their favor and against LED One as follows:

a.   That Defendants be preliminarily and permanently enjoined and restrained from disclosing the Manncorp Trade Secrets, from using Manncorp's Trade Secrets or other proprietary and confidential information, and from otherwise unfairly competing with Manncorp;

b.   That Defendants return all Manncorp Trade Secrets and other confidential information, and any copies thereof, in their possession to Manncorp;

c.   That Defendants (and any of their affiliates, successors and/or assigns) be preliminarily and permanently enjoined from operating or conducting business through their eledsupply.com website, or any other website, which is based on or operated in accordance with any Manncorp Trade Secret(s);

d.   Monetary damages caused by the misappropriation of the Manncorp Trade Secrets and LED One's unfair competition with Manncorp, in an amount to be proven at trial;

e.   Exemplary damages;

f.   Attorneys' fees and costs incurred in bringing this action; and

g.   Such further relief as this Court deems just and proper.

## COUNT IX
### Breach of Covenant of Good Faith and Fair Dealing
### (Plaintiffs v. All Defendants)

1.   Manncorp incorporates by reference the foregoing averments as if fully set forth herein.

2.      The acts, practices and conduct of Tang and McCoy in breaching the Employment

Agreement constitute breaches of the covenant of good faith dealing implied in all contracts.

WHEREFORE, plaintiffs Manncorp, Inc., Mann Manufacturing Services, Inc., and SMT

International, Inc., demand judgment in their favor and against Tang and McCoy for compensatory

and punitive damages arising from their breaches of the Employment Agreement, together with

attorneys' fees, costs and such further relief as the Court deems just and proper.

Respectfully submitted,

**FISHER ZUCKER LLC**

By: _____
Lane J. Fisher
F. Joseph Dunn
Gregory L. Kallet
21 South 21st Street
Philadelphia, PA 19103
(215) 825-3100
lfisher@fisherzucker.com
jdunn@fisherzucker.com
gkallet@fisherzucker.com
*Attorneys for Plaintiffs*

Dated:  May 5, 2015

# EXHIBIT "A"

## AGREEMENT

THIS AGREEMENT is entered into this 24h day of June, 2011, between Manncorp, Inc., a Pennsylvania corporation with a principal place of business at 2845 Terwood Road, Willow Grove, PA 19090 ("Manncorp") and Jinlei (PENNY) Tang ("Penny"), a resident of 2141 I Street #315 N.W., Washington, DC 20037.

WHEREAS, Manncorp is a manufacturer and distributor of electronic production equipment, including surface mounted technology ("SMT") equipment, operating sales offices in Willow Grove, PA and San Diego, CA.

WHEREAS, as a result of the expenditure of considerable time, effort, skill and money Manncorp has developed certain relationships with overseas and local manufacturers of electronic production equipment and negotiated certain exclusive and non-exclusive agreements ("distribution rights") for the distribution of products (the "products"); and

WHEREAS, in reliance upon the distribution rights, to create a market for the products, Manncorp, among other things, prepares an extensive website for the products using professional photography, exhibits the products at trade exhibitions, prepares and bears the cost of internet marketing, maintains a large data base of customers, potential customers and contacts, incurs extensive international travel and visitation costs both to customers and to overseas manufacturers, determines modifications necessary to meet customer specifications, develops through third parties particular sub-assemblies for the products, makes extensive software modifications, and vigorously markets the products through all available means; and

WHEREAS, Manncorp wishes to employ Penny, and thereafter disclose certain proprietary information, related to the vendors, customers and potential customers of Manncorp, to Penny in reliance upon the terms and conditions set forth herein.

NOW, THEREFORE, Manncorp has relied upon information that Penny provided to Manncorp. Manncorp does not intend to restrict or exclude the future employment of Penny within the industry, nor put undo constraints, but only to protect the proprietary nature of our vendor relationships, established over many years. Penny understands the sensitive and tenuous nature of these relationships. This agreement in consideration of the foregoing recitals and the mutual promises, commitments and understandings contained herein, the receipt and sufficiency of which is hereby acknowledged, Manncorp and Penny hereby agree as follows:

A. Designation. Subject to the terms set forth herein, Manncorp hereby designates Penny as its employee, and Penny hereby accepts such appointment and agrees to devote his time and efforts to Manncorp products, with compensation package and benefits as detailed in **ADDENDUM "A".**

B. Business relationship. The business relationship between the parties shall be governed by this Agreement, and Manncorp's other general policies and procedures regarding employment, provided that in the event of any conflict this Agreement shall control.

C. <u>Term</u>. This Agreement shall continue from the date above written for one (1) year, and renew automatically, unless sooner terminated by either party for any reason whatsoever with one week written notice.

D. <u>Duties of Penny</u>:  The duties of Penny are as follows:

1. Assist with Manncorp's information technology.
2. Assist with developing and implementing sales strategies.
3. Assist with preparation of product quotations.
4. Participate in the preparation of marketing and sales information requiring contact with suppliers
5. Prepare feedback analyses of equipment to our vendors by making recommendations to improve machinery and summarizing our customers feedback.
6. Visit Manncorp's vendors to learn the product as required.
7. Assist in solving customers' problems
8. Review internet optimization
9. Review search engine statistics
10. Trade show attendance
11. Phone and/or personal visits with customers and vendors.
12. Review, use and upkeep of databases showing customers and potential customers, confidential vendor information and Manncorp service manuals.
13. Use of technical, marketing and sales literature, manuals, and their electronic versions

E. <u>No Obligations</u>.  Penny shall not incur any obligation nor execute any documents which evidence an obligation on behalf of Manncorp, without Manncorp's prior written consent.  Penny shall not become obligated under any lease or installment sale contract for any electronic equipment, including internet, telephones or similar equipment on behalf of Manncorp.

F. <u>Termination of Employment</u>.  Manncorp may terminate this agreement and employment with or without cause with one week written notice to Penny.  Penny may also terminate this agreement and employment with or without cause with one week written notice to Manncorp.

G. <u>Suppliers</u>.  For a period of three (3) years after the expiration or termination of this Agreement, regardless of the cause, Penny shall not, directly or indirectly, for himself or through, on behalf of, or in conjunction with any other person, partnership or corporation, solicit, service or contact any Supplier of Manncorp, identified on **ADDENDUM "B"** attached hereto (as updated by Manncorp), for any competitive business purpose or hire any Manncorp employee.

H. <u>Materials</u>.  For a period of five (5) years after the expiration or termination of this Agreement, regardless of the cause, Penny shall not, directly or indirectly, for himself or through, on behalf of, or in conjunction with any other person, partnership or corporation, use, reproduce or sell any Manncorp books, records, manuals, literature, products, electronic material and other material owned by Manncorp or used by Manncorp in connection with the conduct of its business for any competitive business purpose whatsoever.

I.   <u>Surrender of Equipment and Books and Records Upon Termination</u>.   Penny acknowledges that all Manncorp owned equipment, inventory, telephone numbers, customer lists (Goldmine data bank) and prospective customer database lists, contact lists, mailing lists, software intrinsic to any machines or equipment currently or previously sold by Manncorp, books, records, manuals, literature, products and other material owned by Manncorp in connection with the conduct of its business shall at all times remain the property of Manncorp, and that upon notice of termination hereunder, manner or cause of said termination, Penny will immediately surrender to Manncorp all such property to Manncorp.   This is to include computer & computer records, cell phone, fax machines, pager, and any other Manncorp property.

J.   Customers.  For a period of two (2) years after the expiration or termination of this Agreement, regardless of the cause, neither Penny, nor any member of his immediate family shall, directly or indirectly, for itself or through, on behalf of, or in conjunction with any other person, partnership or corporation, solicit, service or contact any customer of Manncorp, for any competitive business purpose whatsoever.

K.   Prospective Customers.   For a period of two (2) years after the expiration or termination of this Agreement, regardless of the cause, known prospective customer contacts of the company may not be divulged or solicited by Penny or any members of their immediate family.

L.   <u>Disclosure of Proprietary Information</u>.   Penny hereby acknowledges that certain proprietary information concerning Manncorp will be disclosed to Penny as a result of this Agreement, including the identity of Manncorp's overseas and domestic suppliers, which represent the lifeblood of Manncorp's business.   It is therefore agreed that during, or at any time after termination of this Agreement, Penny shall maintain the confidentiality of, and shall not disclose in any way to any person, employee, firm, partnership or corporation the names, addresses, office, mobile and personal telephone numbers, email addresses, and any other information which would or could divulge the identity of Manncorp's suppliers, customers, prospective customers, referral sources, products, services, methods, operation, financing or services; and any secret or confidential information, knowledge or data of or about Manncorp, wherever and however stored, relating to research, computer software and hardware, development, strategies, technologies, finances, marketing methods, data bases, business or technical processes, systems, methods, machines, inventions, discoveries or other matters which are of a proprietary or confidential nature. Secret or confidential information shall includes all information learned or as a consequence of performance under this Agreement, and not generally known in the industry, even if such information was developed by Penny.

M.   Scope   Given that the business of Manncorp is international in scope, the parties agree that the scope of the covenants contained in this agreement shall be national in nature and shall encompass the entire continental United States, Mexico, Canada, and any other country in which Manncorp is then doing business.

N.  Intent and Enforcement.  It is the intent of the parties that the provisions of this agreement shall be judicially enforced to the fullest extent permissible under applicable law; accordingly, the parties agree that any reduction in scope or modification of any part of the noncompetition provisions contained herein shall not render any other part unenforceable. In the event of the actual or threatened breach of this paragraph by Penny, or any member of his immediate family, Manncorp shall be entitled to an injunction restraining such person from any such actual or threatened breach.  Penny agrees that in the event of the actual or threatened breach of this agreement, Manncorp's harm will be irreparable and that Manncorp has no adequate remedy at law to prevent such harm.   Penny further acknowledges and agrees that the time limitation of the paragraph shall be tolled during any default thereunder.

O.  Notices.  All notices required to be given hereunder shall be in writing, personal delivery, including by fax, or the next day after mailing by overnight mail at the addresses indicated below:

Henry Mann, President
Manncorp, Inc.
2845 Terwood Road
Willow Grove, PA 19090
Phone: (215) 830-1200
Fax: (215) 830-1206
Email: hmann@manncorp.com

Jinlei (PENNY) Tang
2141 I Street #315 N.W.
Washington, DC 20037
Phone: 202-243-9812
Email: jinleitang@gmail.com

or to such other address or to the attention of such other person as a party shall designate by prior written notice.

P.  Amendment.  No amendment to this Agreement shall be binding on either party unless produced in writing and signed by all parties hereto.

Q.  Governing Law.  This agreement has been negotiated in the Commonwealth of Pennsylvania and the law of that state shall govern its construction and validity.

R.  Venue  Any action or proceeding commenced to enforce the terms this Agreement shall be commenced in a state or federal court in the Commonwealth of Pennsylvania, and such court shall have exclusive jurisdiction over such action.

S.  Waiver.  The waiver by either party of any breach or violation of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach violation hereof.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year first above written.

MANNCORP, INC.

By: _Jinlei Tang_
Jinlei (PENNY) Tang
Date:

BY: _[signature]_
Henry Mann, President
Date: 7. 11. 11

## ADDENDUM "A"

**Compensation**.  Penny shall be paid a salary of $950.00 per week.   Within 90 days Penny will receive an increase of $50.00 per week.  Manncorp does not have an official policy on sick time, and expects employees will not abuse its' leniency.

**Health Insurance.**  Health insurance for Penny will become effective the first day of the month following her employment date.

**Expenses**.  Manncorp will reimburse all properly vouchered travel expenses.  All other expenses need to be preapproved.

**Probationary period**, Penny is subject to a 90 day probationary period whereby either party, Penny or Manncorp, can terminate his agreement/employment without any cause.

**Vacation.**   Penny shall receive one week vacation the first year and two weeks vacation the second and succeeding years.

By: _Jinlei Tang_
Penny (PENNY) Tang

Date: _07 / 11 / 2011_

BY: _[signature]_
Henry Mann, President

Date: _7/11/11_

ADDENDUM "B"

MANNCORP VENDOR LIST
June, 2011

ADO TECHNOLOGY LIMITED, Hong Kong
A.I. CORPORATION, Korea
AQUEOUS TECHNOLOGIES, CA
AUTOTRONIX-SMT (ASIA) LTD, Hong Kong/GER
BEIJING TORCH TECHNOLOGY CO., China
CHIMALL UNIVERSAL CO., LTD., China
DIMA SMT SYSTEMS, Deurne, Holland
FUSO SEIKI CO., LTD., Japan
FULLY WEALTH TRADING LIMITED,HK
GLOBAL  ACTIVE TECHNOLOGIES,Singapore
J.R.J. ELEC. CO., LTD., Taiwan
KINCE WORLDWIDE CO., LTD., China
LEADFREE ELEC. EQUP. MFG. LTD, China
LINDA WU, China
LOUIS YI, China
MDC CO. LTD, Japan
NAMA ELECTRONIC CO., LTD., Korea
NATIONAL SOLBOT, Taiwan
PTS SYSTEM(S) PTE LTD, Singapore
REN THANG CO., Taiwan, R.O.C.
SENTRY YARN ENTERPRISE CO.,LTD.,Taiwan
SHENMAO TECHNOLOGY INC., Taiwan
SHENZHEN TOLO MACH. EQUIP. CO., China
SHENZHEN SHUTTLE STAR IND. CO., LTD. China
SHENZHEN ZHENHUA ELEC. EQUIP. LTD, China
SHENZHEN ZHUO MAO TECH. CO. , LTD., China
SIGNKING AUTOMATION CO., Honk Kong
TOPOINT TECHNOLOGY LTD, Hong Kong
TWS, Italy
UNION ELECTRONIC EQUIP., China
WINSON ELEC. MANUF. EQUIP. LTD., Hong Kong
Current and future suppliers from China and Taiwan

The above list is to include all vendors which subsequent to the execution date
of this agreement form a partnership with Manncorp.

By: _Jinlei (Penny)  Tang_
     Jinlei (PENNY) Tang

Date: _07/11/2011_

By: _____
     Henry Mann

Date: _7.11. 2011_

# EXHIBIT "B"



**LEDone**
—— Distribution Inc ——

4031 Clipper Ct, Fremont, CA 94538  Tel: (510) 770-1189, Fax: (510) 217-9461  info-service@ledonedistbution.com

March 01,2015
Dear Penny Tang

*Congratulations! I am very pleased to confirm our offer of employment to join ELED supply
as a unit manager effective  March 01, 2015 We believe that you will be a fine addition to our
Management team and that this represents an excellent opportunity for you. As discussed, you will
be outside employee, with a starting salary of $ 3,500.00 per Month base. After you are on board
will star $ 7,000.00 per Month. You will be paid on a bi-weekly basis.
Bonus, over of performance by business unit 5% before tax, will be end of Dec every year schedule. .
If Company keep grow performance bonus will be change of both agree.
In addition you will be covered by our comprehensive employee benefits package, after 3 months*

*You will be entitled to 10 vacation days, with sick days and personal leave days per annum. More
complete information about all of these valuable benefits and entitlements will be provided after 90
days*

*The first 90 days of your employment will be considered probationary and provides a
Means by which you and your supervisor can evaluate the suitability of this placement/or work
Situation. We encourage you to use this opportunity to discuss issues and questions with your
supervisor*

*Please contact me should you have any questions regarding this offer. To confirm your
Acceptance of this offer, please return a signed copy of this*

*We look forward to a mutually rewarding employment experience for you here at
It is our hope that you will find this position exciting and rewarding.*

*Best Regards*

*Jonathan Chu*

*General Manager*

# EXHIBIT "C"



**LEDone**
—— Distribution Inc ——

4031 Clipper Ct, Fremont, CA 94538   Tel: (510) 770-1189, Fax: (510) 217-9461   info-service@ledonedistbution.com

March 05, 2015
Dear Mr . Trever

Congratulations! I am very pleased to confirm our offer of employment to join LEDone
as a sales Account Manager or (Warehouse and technical support no limited)  within our  Sales
department  effective  May 01, 2015 ( If early please updated for me). We believe that you will be a
fine addition to our sales team and that his represents an excellent opportunity for you. As discussed,
you will be a full-time employee, with a starting salary of $ 36,000.00 per year base. You will be
paid on a bi-weekly basis and your commissions will be paid to you on the 15th day of the following
month as per outlined in the attached commission schedule.
In addition you will be covered by our comprehensive employee benefits package, after 3 months

You will be entitled to 10 vacation days, with  sick days and personal  leave days per annum. More
complete information about all of these valuable benefits and entitlements will be provided after 90
days
    After 3 months base will change to $40,000.00 per year Plus commission 4-8%  selling price
level. If take warehouse and technical support job will keep same base plus yearly bonus that you
can final decide with me. For base we can see you coming performance.
    Special offer that you can star right away healthy insurance, For 401K company are looking for .
Hope company can star June 01, 2014

Please contact me should you have any questions regarding this offer. To confirm your
acceptance of this offer, please return a signed copy of this

We look forward to a mutually rewarding employment experience for you here at LEDone
It is our hope that you will find this position exciting and rewarding.

Best Regards

J. Trever McCoy

Jonathan Chu

General Manager

# EXHIBIT "D"

ELEDSUPPLY-SPEC-TABLE-CODE.doc Properties

General | Summary | Statistics | Contents | Custom

ELEDSUPPLY-SPEC-TABLE-CODE.doc

Type:       Microsoft Word 97-2003 Document
Location:   Z:\Users\Penny\Dropbox\ELEDSUPPLY\CODE
Size:       32.5KB (33,280 bytes)

MS-DOS name:   ELEDSUPPLY-SPEC-TABLE-CODE.doc
Created:       Friday, May 01, 2015 12:42:03 PM
Modified:      Wednesday, March 18, 2015 12:16:36 PM
Accessed:      Friday, May 01, 2015 12:42:03 PM

Attributes:   ☐ Read only    ☐ Hidden
              ☑ Archive      ☐ System

          OK          Cancel

# EXHIBIT "E"




LED SUPPLY · LED · INDOOR LIGHTING · OUTDOOR LIGHTING · CATEGORY FOUR

# Get Free Shipping on Straits LED Floods

- Enhanced illumination & performance
- High lumen CREE LED chips
- 5 year warranty

**Shop Now**



 

 



## Latest Arrivals

    

**150 WATT 15,000LM LED EDGE FLOOD LIGHTS – 400 WATT EQUAL**
Our Price: $89.95

**HIGH OUTPUT 100 WATT 10,000LM WATERPROOF LED HIGH BAY LIGHTING – 250 WATT EQUAL**
Our Price: $89.95

**40 WATT 2X2 4240LM LED FLAT CEILING PANEL LIGHT – 150 WATT EQUAL**
Our Price: $69.95

**150 WATT 14292LM LED SHOEBOX AREA LIGHTING – 400 WATT EQUAL**
Our Price: $89.95

**8 WATT T8 2FT/24" 920LM LED TUBE LIGHTS – 22 WATT EQUAL**
Our Price: $9.95





## *Latest Arrivals*



**150 WATT 15,000LM LED EDGE FLOOD LIGHTS – 400 WATT EQUAL**
Our Price: $89.95




**HIGH OUTPUT 100 WATT 10,000LM WATERPROOF LED HIGH BAY LIGHTING – 250 WATT EQUAL**
Our Price: $89.95



**40 WATT 2X2 4240LM LED FLAT CEILING PANEL LIGHT – 150 WATT EQUAL**
Our Price: $89.95



**150 WATT 14292LM LED SHOEBOX AREA LIGHTING – 400 WATT EQUAL**
Our Price: $89.95



**8 WATT T8 2FT/24" 920LM LED TUBE LIGHTS – 22 WATT EQUAL**
Our Price: $9.95



Copyright © a LED Supply. All right reserved. Built with Volusion.

# Get Free Shipping on Straits LED Floods

- Enhanced illumination & performance
- High lumen CREE LED chips
- 5 year warranty



**Shop Now**

STRAITS LIGHTING CREE DLC



L_JN-01



Click to Zoom 🔍        Take Action

L_NJ_01



Click to Zoom 🔍        Take Action

L_SN_01



Click to Zoom 🔍        Take Action

L_HS_01



Click to Zoom 🔍        Take Action

L_MJ_01



Click to Zoom 🔍        Take Action

L_DK_01



Click to Zoom 🔍        Take Action

L_OW_01



Click to Zoom 🔍        Take Action

L_NN_01



Click to Zoom 🔍        Take Action